# Bowersox's Appeal.

1. Illiteracy and poverty do not deprive a widow of her statutory preferred right to letters of administration on the estate of her husband dying intestate. A good mind and sound judgment, a knowledge of the values of property and of the practical business transactions of life, are sufficient to satisfy the requirements of the law. Poverty is not insolvency.

2. Cornpropst's Appeal, 9 Cas. 538, distinguished.

3. The evidence in this case, though conflicting, held to be sufficient to prove the marriage of the alleged widow to the deceased.

May 1st 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Orphans' Court of *Snyder county:* Of January Term 1882, No. 138.

Appeal of Joseph Bowersox and Samuel Bowersox from a decree of the said court, revoking the letters of administration granted by the register of wills, to the appellants, on the estate of John Bowersox deceased ; and directing the register to grant letters to Susannah Bowersox as widow of decedent.

The facts were as follows : On February 26th 1875, John Bowersox was adjudged a lunatic by the Court of Common Pleas of Snyder county, a committee being appointed to take charge of his person and estate, and in 1879 he was sent to an asylum. On March 13th 1881 he died, and nine days afterwards the register granted letters of administration to Joseph Bowersox, a son, and Samuel Bowersox, a brother of the intestate and his committee in lunacy.

Susannah Bowersox, claiming to be the widow of the de-

cedent, and the right to administer his estate, appealed to the Orphans' Court. She was seventy years old at the time, and was living with Philip Swineford, a son by her former marriage with George Swineford, deceased. By his will George Swineford left Susannah certain property to be enjoyed by her only while she remained his widow. Before the commissioner appointed by the court to take testimony, Susannah Bowersox testified that her maiden name was Inhoff, that she had been twice married; the first time to George Swineford, and after his death—about twenty years previous to the date of testifying—to John Browersox, by Preacher May (now deceased), and that after her marriage with John Bowersox, she had lived with him until he was taken to the asylum. She further testified that she could read nothing except German printing and could not sign her name.

Many other witnesses testified that both John and Susannah Bowersox had told them that they were married; and that they had lived together for twenty years, during which time they had the general reputation in the neighborhood of being married, and repeatedly executed deeds as husband and wife. A family Bible belonging to John Bowersox was produced, containing a separate leaf, upon which was entered in German—alleged to be in the handwriting of John Bowersox—the following: "We entered into holy matrimony in the year 1860 on the 19th day of May—with Susannah Inhoff." No other record of the marriage was produced, nor any witness of the ceremony.

On the part of the administrators Joseph Bowersox testified that on some occasions both John and Susannah Bowersox in presence of each other, had told him they were married, but that afterwards they acknowledged they were not; and through his influence on November 26th 1877, after the adjudication of lunacy, they were married by one Squire Bowersox, at which time they acknowledged that they had not been previously married. Numerous witnesses were then produced who testified that there were contradictory stories in the neighborhood during the time that John and Susannah Bowersox lived together, some people affirming that they were, and others that they were not husband and wife.

After a hearing the Orphans' Court sustained Susannah Bowersox's appeal, and BUCHER, P. J., entered the following decree: "The letters heretofore granted are vacated, and it is ordered that the register issue letters to Susannah Bowersox, widow of decesed, upon her giving satisfactory security according to law."

Whereupon Joseph and Samuel Bowersox took this appeal assigning for error the decree of the court: (a) In holding that Susannah Bowersox is the widow of John Bowersox, and as

such entitled to letters of administration on his estate. (*b*) In holding that Susannah Bowersox is a competent person to be entrusted with the settlement of the decedent's estate.

*T. J. Smith* and *A. W. Potter*, for appellants.—Opposed to the testimony of Susannah Bowersox, is the fact that during the years she claims to have been married to John Bowersox she received benefit under the will of her former husband; also the fact that she was married November 26th 1876 to John Bowersox (which marriage was of course void on account of his lunacy), and the further fact that if she was married as she alleges, it was kept secret from the respective families. The evidence produced of marriage, by reputation and cohabitation, was not sufficient. A presumption of marriage by reputation must be established "by the speech of the people in the neighborhood." Here the opinion of the people was so divided in its character, that no presumption of marriage can arise from it: Commonwealth *v.* Stump, 3 P. F. S. 132; Greenawalt *v.* McEnelley, 4 Nor. 356.

Susannah Bowersox is not a competent person to administer the estate, on account of her ignorance, her advanced age, her physical disability, and the fact that she lives with, and is controlled by Philip Swineford, who is largely indebted to the estate and refuses to pay: Ellmaker's estate, 4 Watts 34; Bieber's Appeal, 1 Jones 157. Besides, having no property, she brings no personal liability to the trust, and although she may not be insolvent within the meaning of the Acts of Assembly, yet this is sufficient reason to render her incompetent: Cases last above cited, and Cornpropst's Appeal, 9 Casey 538.

*Charles Hower* for appellee.—Almost all the witnesses examined prove that John Bowersox told them after May 1860, that he was married to Susannah, or that the old people acknowledged deeds in their presence, as man and wife. This in addition to the appellee's positive testimony, and the entry in the family Bible. The marriage was also established by evidence of cohabitation and reputation, the preponderance of testimony being largely in favor of this view. The fact that they were married again in 1876 is not vital; this was done through the influence of Joseph Bowersox, who insisted upon it; and the report that they were not previously married originated with him.

The appellant's position as to the competency of Susannah Bowersox to administer this estate, cannot be maintained. It is unnecessary to inquire into the business qualifications of persons who desire to administer estates. The 22d section of the Act of March 15th 1832 (P. D. 410, pl. 27) does speak of

"incompetency," referring, no doubt, to lunatics, idiots, insane persons, and those too young or who are litigants with the estate, but does not exclude any one for want of education. Cornpropst's Appeal (supra) decides that insolvency renders a person otherwise entitled to take out letters, incompetent. But Susannah Bowersox is not insolvent. It has not been shown that she owes a dollar.

Mr. Justice Mercur delivered the opinion of the Court, October 2d 1882.

John Bowersox died intestate. The register granted letters of administration on his estate to the appellants, one of whom is a son, and the other a brother of the intestate. Susannah Bowersox, claiming to be the widow of the decedent, and the right to administer on his estate, appealed to the Orphans' Court. After hearing, the court vacated the letters issued to the appellants, and ordered that letters be issued to. Susannah Bowersox.

Two objections are made to the conclusion of the court: one to finding her to be the widow of the decedent, the other to deciding that she was a proper person to be entrusted with the management of the estate. We have carefully examined the evidence. We think it amply sufficient to justify the court in finding that she had been married to John Bowersox. Not only was there positive evidence of the fact of their marriage: but they undoubtedly lived together for some twenty years; and the clear weight of evidence shows, as husband and wife during all that time. The apparent desire not to make the marriage generally known, is accounted for by the fact that all right to her former husband's property terminated when she ceased to be his widow.

The effort to prove her an improper person clearly failed. It is true she is rather illiterate. She cannot write. She cannot read printing unless it be in German. She has not a business education. In this respect she is like a large majority of the widows in the Commonwealth. The Act of Assembly giving the widow a preferred right to administer on the estate of her deceased husband has not made an imperfect or defective education, a legal disqualification. A good mind and sound judgment, a knowledge of the values of property, and of the practical business transactions of life, are sufficient to satisfy the requirements of the statute. All these the appellee has. They will enable her to select competent assistants and able advisers. This will secure an efficient and faithful discharge of the trust.

It is further claimed, inasmuch as she has no separate property, that she comes within the prohibition declared in Cornpropst's Appeal, 9 Casey 537, by reason of insolvency.

This is a misapprehension of the meaning of insolvency. It is not the mere absence of property liable to seizure on execution. It is the owing of debts in excess of the value of his tangible property. If he owes no debt he is not insolvent, although he may have no such property. A young mechanic or laborer out of debt, just starting for himself with no property but his knowledge, brawny arm, and energetic will, is not insolvent. Nor is one without visible property, owing no debt, who has acquired a learned profession which he is about to follow. In all these cases each may by industry, labor, and economy, pay his way and contract no debts. Without debts there can be no insolvency. Poverty and insolvency are not synonymous terms.

The evidence in the present case does not show the appellee to owe a single dollar. If anything remain of her husband's estate after paying his debts, she will have property. That will be in addition to the undoubted security which she must give before the letters are issued to her.

Decree affirmed and appeal dismissed at the costs of the appellants.

SHARSWOOD, C. J., and TRUNKEY, J., dissent.